IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ASHLEY HAMBY, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:23-cv-249-JDK |
| JAMES WILSON, et al., | § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT J.B. HUNT TRANSPORT'S MOTION TO DISMISS**

Before the Court is Defendant J.B. Hunt Transport, Inc.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Docket No. 35.[1] For the reasons explained below, the Court **GRANTS** the motion.

**I.**

For purposes of this order, the Court accepts as true Plaintiffs' well-pleaded facts in their Second Amended Complaint. *Campbell v. Wells Fargo Bank, M.A.*, 781 F.2d 440, 442 (5th Cir. 1986).

This case arises from a December 11, 2021 tractor-trailer accident in Panola County, Texas. Defendant James Wilson was driving a tractor-trailer as an employee

---

[1] Defendant J.B. Hunt filed its motion as a standalone four-page docket entry (Docket No. 35). It then filed a separate seven-page brief supporting its argument to dismiss Plaintiffs' direct negligence claims (Docket No. 36) and yet another twelve-page brief supporting its argument to dismiss Plaintiffs' negligent broker claims (Docket No. 37). The Court reminds the parties that Local Rule CV-7(c) requires that a motion and any briefing be contained in a single document. Further, Local Rule CV-7(a)(2) limits non-case-dispositive motions to fifteen total pages. As per the Court's Order Governing Proceedings (Docket No. 10), counsel are instructed to review the most recent versions of the Federal Rules of Civil Procedure and the Local Rules for the Eastern District of Texas.

of Defendants Euro Express, LLC and Damir Arnaut.  Docket No. 28 ¶¶ 14–17. Wilson rear-ended a passenger truck, resulting in the vehicle's complete destruction and the deaths of driver Kaleb Hamby and passenger Gabriel Webb.  *Id.* ¶ 30. Defendant J.B. Hunt Transport, Inc. was either retained as the motor carrier to transport the load Wilson was hauling during the collision, *id.* ¶ 61, or, alternatively, it brokered the load involved, *id.* ¶ 67.  Plaintiffs also allege that Defendant Great Hauler, Inc. brokered the load being hauled during the accident. *Id.* ¶ 72.

Plaintiffs bring negligence, negligence per se, and gross negligence causes of action against Defendants James Wilson, Euro Express, and Damir Arnaut; negligence and gross negligence causes of action against Defendant J.B. Hunt; and a negligence cause of action against Defendant Great Hauler. *Id.* at 5–13.

Defendant J.B. Hunt now moves to dismiss Plaintiffs' gross negligence, negligent entrustment, negligent hiring, negligent retention, negligent training, and negligent supervision claims because Plaintiffs' Second Amended Complaint fails to plead sufficient facts to state a plausible claim for relief. J.B. Hunt also moves to dismiss the claims of negligent brokering, selection, and monitoring of a motor carrier as preempted by the Federal Aviation Authorization Administration Act, 49 U.S.C. §§ 14501, *et seq.* (the "FAAAA").

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim

2

will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

A complaint that fails to state a claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6). Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.

The Court first addresses J.B. Hunt's argument that the Second Amended Complaint fails to plead facts sufficient to support the gross negligence, negligent entrustment, negligent hiring, negligent retention, negligent training, and

negligent supervision claims against J.B. Hunt. Docket No. 36. In their response, Plaintiffs essentially agree and concede that their direct negligence claims against J.B. Hunt are deficient. Docket No. 43 at 11. Accordingly, the Court grants the motion to dismiss these claims against J.B. Hunt.

Plaintiffs, however, also seek leave to amend their complaint to cure the identified deficiencies. *Id.* at 11–12. The deadline to move for leave to amend pleadings was December 8, 2023. Docket No. 16 at 4. Plaintiffs asked to amend their complaint on February 13, 2024. Docket No. 43. Defendant J.B. Hunt did not respond to this request.

When a party seeks to amend its pleadings after the deadline in the Court's scheduling order, Federal Rule of Civil Procedure 16(b) governs. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Rule 16(b)(4) allows that a "schedule may be modified only for good cause and with the judge's consent." In determining whether a party has shown good cause, the Court considers four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Fahim*, 551 F.3d at 348 (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). The Court considers the four factors "holistically" instead of "mechanically count[ing] the number of factors that favor each side." *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009).

Once the moving party demonstrates good cause under Rule 16(b), the Court considers the motion for leave to amend under Rule 15(a)(2), which provides that courts "should freely give leave [to amend] when justice so requires." Whether to grant leave to amend pleadings under Rule 15 is "within the discretion" of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).

Plaintiffs seek leave to amend only under Rule 15(a)(2) and do not address Rule 16(b). Docket No. 42 at 12–13. Further, Plaintiffs have not attached a proposed amended complaint, as Local Rule CV-7(k) requires for a motion for leave to amend a complaint. Further, Defendants did not respond to this request, so the Court is unclear on Defendants' position on the matter. Accordingly, the Court denies Plaintiffs' request without prejudice. Plaintiffs may seek leave to amend their complaint through an appropriate motion fully addressing the governing factors under Rules 16(b) and 15(a)(2) and providing a copy of their proposed amended complaint.

## IV.

Defendant J.B. Hunt also seeks to dismiss Plaintiffs' claims of negligent brokering, including negligent selection of a motor carrier and negligent monitoring of a motor carrier, as preempted by the FAAAA. Docket No. 37. The FAAAA's preemption clause provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

5

J.B. Hunt argues that the preemption clause should be broadly construed to bar Plaintiff's negligent brokering claims because these common-law claims are "related" to the "service" of brokering "the transportation of property." Docket No. 37 at 4–9. J.B. Hunt further argues that § 14501(c)(2)(A)'s "safety exception" does not save a negligent brokering claim from preemption. This provision of the FAAAA carves out an exception to the preemption clause, explaining that preemption "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." J.B. Hunt contends that a negligent brokering claim is not an exercise of the state's safety and regulatory authority and is not "with respect to motor vehicles," as the exception requires. *Id.* at 10–12.

Plaintiffs oppose dismissal for two reasons. *First*, Plaintiffs' Second Amended Complaint leaves open whether J.B. Hunt was the broker or the motor carrier for the load involved in the accident. Docket No. 43 at 4–5. And, Plaintiffs note, J.B. Hunt's preemption argument applies only to a broker, not a motor carrier. This fact question, Plaintiff asserts, renders dismissal under Rule 12(b)(6) inappropriate. *Id.* at 4. *Second*, even if J.B. Hunt acted as the broker, Plaintiffs contend that their negligence claim is exempt from preemption under the safety exception. *Id.* at 5–11.

The Fifth Circuit has not addressed FAAAA preemption of state law tort claims. But other courts have generally taken three different approaches to the question. *See Bertram v. Progressive Se. Ins. Co.*, 2021 WL 2955740, at *2 (W.D. La. July 14, 2021).

6

*First*, some courts have found that § 14501's express preemption language does not apply to state tort claims because negligent hiring or brokering claims are not sufficiently "related to" the "price, route, or service" of a broker. *E.g.*, *Meek v. Toor*, 2024 WL 943931, at *2 (E.D. Tex. Mar. 5, 2024) ("The Court is not convinced by the rationale that hiring and oversight of transportation companies is so central to the services of freight brokers that negligent hiring claims would significantly impact the services of a freight broker."); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019) (holding that "the FAAAA does not preempt personal injury claims" against a broker); *Mann v. C.H. Robinson Worldwide, Inc.*, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017) (explaining that "a negligent hiring claim as an avenue for imposing liability for an accident does not have anything more than a 'tenuous, remote, or peripheral' connection to the 'price, route, or service' of a broker").

*Second*, some courts have found that although § 14501's express preemption language does apply to state tort claims, such claims are saved from preemption by the safety regulatory exception. *E.g.*, *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512–16 (N.D. Tex. 2020) ("The Court thus finds Plaintiffs' negligent-hiring claim falls within the scope of the safety regulation exception."); *Johnson v. Herbert*, 2023 WL 9503459, at *6–7 (E.D. Tex. Oct. 20, 2023) ("[T]he Court holds that the exception under Section 14501(c)(2)(A) applies to Johnson's negligent hiring claim and thus that the FAAAA does not preempt her cause of action.").

*Third*, some courts have determined that § 14501's express preemption applies to state tort claims and that the safety exception does not save them from preemption. *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 464 (7th Cir. 2023) ("We thus conclude that Ye's negligent hiring claim against GlobalTranz does not fall within the scope of § 14501(c)(2)'s safety exception. The claim is preempted and therefore properly dismissed by the district court."); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1272 (11th Cir. 2023) ("Aspen's negligence claims are not 'with respect to motor vehicles' under the FAAAA's safety exception. They are thus barred by its express preemption provision."); *Gillum v. High Standard, LLC*, 2020 WL 444371, at *5–6, 7 (W.D. Tex. Jan. 27, 2020).

As explained below, the Court finds the reasoning of this third group most persuasive because they most clearly honor the statutory text. The Court thus concludes that § 14501's express language preempts a negligent brokering claim and that the safety exception does not save the claim from preemption.

### A.

The Court first considers whether a negligent brokering claim falls within the FAAAA's express preemption provision.

Congress can indicate its preemptive intent either expressly, through a statute's plain language, or impliedly, through its "structure and purpose." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). When a statute includes an express preemption clause—as here—"the court does not indulge 'any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily

contains the best evidence of Congress' preemptive intent.'" *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 311 (5th Cir. 2023) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).

As noted above, the FAAAA's preemption clause prohibits a state from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The first question is thus whether a common law negligence claim is "a law, regulation, or other provision having the force and effect of law." It is. Because "a common-law rule clearly has 'the force and effect of law,'" such rules "fall comfortably within the language" of preemption provisions like the FAAAA's. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014); *see also Ye*, 74 F.4th at 459; *Aspen Am. Ins.*, 65 F.4th at 1266; *Lopez*, 458 F. Supp. 3d at 512.

The second question is whether a negligent brokering claim is "related to a price, route, or service" of a broker. "[T]he key phrase 'related to' expresses a 'broad pre-emptive purpose.'" *Northwest*, 572 U.S. at 280 (considering preemption under the Airline Deregulation Act); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (interpreting the FAAAA's preemption clause). But "'related to' does not mean the sky is the limit." *Dan's City Used Cars*, 569 U.S. at 261. And § 14501(c)(1) "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral . . . manner." *Id.* (quoting *Rowe v. N.H. Motor Transport A'ssn*, 552 U.S. 364, 371 (2008)) (internal quotations omitted).

9

Here, Plaintiffs' allegations supporting their negligent brokering claim go directly to the services of a broker. A broker's service is "selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (defining "broker"). In other words, selecting a motor carrier to transport a load is the essential service of the broker. Plaintiffs' Second Amended Complaint alleges that J.B. Hunt "had a duty to select a competent motor carrier" and "had an ongoing duty to monitor Euro Express to ensure it was a competent motor carrier" to transport the load involved in the accident leading to this case. Docket No. 28 ¶¶ 69, 70. And Plaintiffs' negligent brokering claim stems from J.B. Hunt's alleged breach of that duty. *Id.* ¶ 71. Thus, the negligent brokering claim is fundamentally "related to" the broker's service of selecting a competent motor carrier. *Ye*, 74 F.4th at 459; *Aspen Am. Ins.*, 65 F.4th at 1267–68; *Miller*, 976 F.3d at 1024–25; *Gillum*, 2020 WL 444371, at *4 (finding that Texas negligence claims against a freight broker "relate to" the broker's services).

Because Plaintiffs' negligent brokering claim is "a law, regulation, or other provision having the force and effect of law" that is "related to a price, route, or service" of a broker, the plain language of the FAAAA expressly preempts Plaintiffs' claim here unless it falls within one of the statute's exceptions.

### B.

Plaintiffs argue that their negligent brokering claim is not preempted due to the safety exception in § 14501(c)(2)(A). Docket No. 43 at 5–11. The Court disagrees. *See, e.g., Ye*, 74 F.4th at 460–65; *Aspen Am. Ins.*, 65 F.4th at 1268–72.

10

Under § 14501(c)(2)(A), the FAAAA's preemption clause "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." To meet this exception, a common law negligence claim must be (1) within a state's "safety regulatory authority" and (2) "with respect to motor vehicles." Because the Court concludes that a negligent brokering claim is not "with respect to motor vehicles," it need not consider the first half of the exception. *See Aspen Am. Ins.*, 65 F.4th at 1273 (Jordan, J., concurring).

"By limiting the safety exception to apply to state laws 'with respect to motor vehicles,' Congress narrowed the scope of the exception to those laws concerning a 'vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation.'" 49 U.S.C. § 13102(16) (defining "motor vehicle"). *Ye*, 74 F.4th at 460. This narrow exception requires a direct link between the state law in question and motor vehicle safety. *Id.*; *Aspen Am. Ins.*, 65 F.4th at 1271. And there is no direct link between Plaintiffs' negligent brokering claim and motor vehicle safety.

In its thorough analysis of the statute, the *Ye* court found a clear delineation between brokers and motor vehicle safety. *Id.* at 460–64. For example, after implementing the broad preemptive provision of § 14501(c)(1), Congress carved out specific exceptions for state laws for motor vehicle safety, cargo loads, motor carrier insurance, transportation of household goods, and two truck operations. *Id.* at 461 (citing § 14501(c)(2)). But despite specifically mentioning brokers in § 14501(c)(1), Congress conspicuously failed to mention brokers in any of the preemption exceptions. The *Ye* court also points out that while § 14501(b)(1) preempts state laws

11

"relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker," Congress omitted a safety exception for brokers in § 14501(b) paralleling that of § 14501(c)(2). *Id.*; *see also Aspen Am. Ins.*, 65 F.4th at 1271–72 (similarly holding that the safety exception applies only to state laws that have a direct relationship to motor vehicles based on the Supreme Court's finding that a similar phrase in § 14501(c)(1) "massively limits" the scope of preemption and because allowing an indirect relationship would render portions of § 14501(c)(2)(A) non-operative or redundant).

The Court thus concludes that the safety exception excepts from preemption only state laws or regulations that have a direct relationship to motor vehicle safety. And a negligent hiring or brokering claim is not directly related to motor vehicle safety. Indeed, in their negligent brokering claim, Plaintiffs allege that J.B. Hunt breached its duty by failing to select a competent motor carrier. Docket No. 28 ¶¶ 67–71. But this section of the complaint "does not purport to enforce any standard or regulation on the ownership, maintenance, or operation of" a motor vehicle as defined by 49 U.S.C. § 13102(16). *See Aspen Am. Ins.*, 65 F.4th at 1272. And the "attenuated connection" between the broker and the safety of the motor vehicles operated by the motor carrier "is simply too remote for the safety exception" to apply to a negligent brokering claim. *Miller*, 976 F.3d at 1031 (Fernandez, J., concurring in part and dissenting in part).

## C.

As mentioned, Plaintiffs argue that the complaint leaves open whether J.B. Hunt was the broker or motor carrier for the load at issue, and that the Court should

therefore deny J.B. Hunt's motion to dismiss the negligent brokering claim at this stage of the case. *See* Docket No. 43 at 4–5. The Court disagrees. If J.B. Hunt was the broker, then the claim should be dismissed as preempted, as discussed above. If, on the other hand, J.B. Hunt was the motor carrier, then the claim should be dismissed for failure to state a claim. Either way, dismissal of the negligent brokering claim is appropriate under Rule 12(b)(6).

## V.

For the reasons explained above, the Court **GRANTS** Defendant J.B. Hunt's motion to dismiss (Docket No. 35) Plaintiffs' gross negligence, negligent entrustment, negligent hiring, negligent retention, negligent training, and negligent supervision claims against J.B. Hunt. Plaintiffs' request to amend their complaint as to these claims is **DENIED** without prejudice. Plaintiffs may seek leave to amend their complaint through an appropriate motion.

Further, the Court concludes that Plaintiffs' negligent brokering claim is preempted by 49 U.S.C. § 14501(c)(1) and is not excepted from preemption by the safety exception clause of § 14501(c)(2)(A). Accordingly, the Court **GRANTS** Defendant J.B. Hunt's motion to dismiss (Docket No. 35) Plaintiffs' negligent brokering claim.

So **ORDERED** and **SIGNED** this **21st** day of **May, 2024.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE